# IN THE UNITED STATES DISTICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT MARTIN IV,** | : | **No. 3:17cv589** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **SIMOS, t.d.b.a. SIMOS** | : | |
| **INSOURCING SOLUTIONS,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is defendant's motion to dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 5). The parties have briefed their respective positions and the motion is ripe for disposition.

**Background**

On July 27, 2016, Plaintiff, Robert Martin IV (hereinafter "plaintiff") interviewed for a job at Lowe's Distribution Center, located in Schuylkill County, Pennsylvania. (Doc. 1-1, Pl's. Compl.)(hereinafter "Compl.")(¶ 5) Defendant, SIMOS Insourcing Solutions, (hereinafter "SIMOS") interviewed plaintiff on Lowe's behalf.[1]  During the initial interview, plaintiff revealed that he had a prior criminal record and mentioned that he did not want to waste time applying if he would be rejected due to the criminal record. (Compl. ¶

---

[1] The exact relationship between SIMOS and Lowe's is not made clear in the complaint.

5). Defendant ran a background check on plaintiff at the interview, advised him he was "good to go," and hired him on the spot to work at Lowe's. (Compl. ¶¶ 7, 8). Shortly thereafter, plaintiff began working at Lowe's unloading trucks. (Compl. ¶ 9).

While he worked at Lowe's, a female employee alleged that plaintiff had harassed her, whereupon plaintiff was temporarily suspended pending an investigation. (Compl. ¶ 10). SIMOS contacted plaintiff, advising that he had been cleared of the allegation, and then he returned to work for about one day before being told to contact a human relations representative.

Plaintiff contacted a human relations representative who informed him that he would be terminated because of his criminal history. (Compl. ¶ 13). Plaintiff received by mail a "Pre-Adverse Notice" dated September 26, 2016, which included a background screening report containing his prior criminal history. (Compl. ¶¶ 15-16).

On or about October 4, 2016, SIMOS terminated plaintiff's employment because of the criminal history. (Compl. ¶¶ 17-18). Plaintiff filed his complaint on March 2, 2017, in the Court of Common Pleas for Schuylkill County, Pennsylvania, alleging only one count: wrongful termination based upon Pennsylvania's Criminal History Records

Information Act, (hereinafter "CHRIA"), 18 PA. CONS. STAT. §§ 9101-9183. (Compl. ¶¶ 25-31.) Specifically, the plaintiff alleges the defendant's actions constitute wrongful termination because they violate public policy as codified in CHRIA. On April 3, 2017, defendant filed a Notice of Removal (Doc. 1), and on April 8, 2017, defendant filed the instant motion to dismiss, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania. (Compl. ¶ 1). SIMOS is incorporated in Delaware with its principal place of business in Georgia. (Compl. ¶ 2; Doc. 1, Notice of Removal ¶ 10). Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

This case is before the court pursuant to defendants' motion to dismiss for failure to state a claim upon which relief can be granted filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint is tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint

and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)

**Discussion**

Plaintiff's complaint contains one count, wrongful termination. (Doc. 1-1, Compl. ¶¶ 25-31). Plaintiff alleges that he was wrongfully terminated from his employment due to his criminal history. Defendant moves to dismiss the complaint arguing that Pennsylvania is an "at-will" employment state and, as a matter of law, plaintiff's termination was legal. After a careful review, we agree with the defendant.

Pennsylvania is an "at-will" employment state, as such, employers enjoy an almost unfettered right to terminate a worker without cause. See Henry v. Pittsburgh & L.E.R. Co., 21 A. 157 (Pa. 1891) ("A railroad corporation, or an individual, may discharge an employee with or without

cause at pleasure, unless restrained by some contract ...."); <u>see</u> <u>also</u> <u>Weaver v. Harpster</u>, 975 A.2d 555, 562 (Pa. 2009) ("In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." (citing <u>Geary v. U.S. Steel Corp.</u>, 319 A.2d 174, 176 (Pa. 1974)).

Two potential exceptions to the at-will employment doctrine exist, under which an employee may seek damages for wrongful termination: first, when an employer terminates an employee with a special intent to harm, and second, when an employee's termination is contrary to public policy. <u>See</u> <u>Goodwin v. Moyer</u>, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006) (citing <u>Ritter v. Pepsi Cola Operating Co. of Chesapeake & Indianapolis</u>, 785 F. Supp. 61, 63-64 (M.D. Pa. 1992)).

Here, plaintiff alleges the public policy exception to at-will employment applies. The public policy exception to the at-will employment doctrine is narrow and predicated on a finding of a clearly defined public policy mandate that concerns a citizen's social rights and responsibilities. <u>See</u> <u>Field v. Phila. Elec. Co.</u>, 565 A.2d 1170, 1179 (Pa. Super. Ct.1989); <u>see</u> <u>also</u> <u>Geary</u>, 319 A.2d at 180 (recognizing that an action for wrongful termination may be appropriate when the at-will employment relationship was terminated in clear violation of a mandate of public policy); <u>Hunger v.</u>

6

Grand Cent. Sanitation, 670 A.2d 173, 176 (Pa. Super. Ct. 1996) ("We have recognized a public policy exception only in extremely limited circumstances.").

In explaining Pennsylvania law, the Third Circuit has recognized that "although the perimeters of the narrow public policy exception have not been precisely defined, there appear to be 'three limited circumstances in which public policy will trump employment at-will." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003). Those three circumstances are: (1) an employer cannot require an employee to commit a crime; (2) an employer cannot prevent an employee from complying with a statutorily imposed duty; and (3) an employer cannot discharge an employee when specifically prohibited from doing so by statute. Id. Plaintiff's complaint alleges the existence of none of the three limited and judicially recognized circumstances.

Instead of relying on one of the three limited judicially recognized circumstances that give rise to public policy exceptions, plaintiff argues that the CHRIA demonstrates Pennsylvania's public policy that former convicts obtain employment and become productive citizens. By its own terms, however, the CHRIA applies only to the hiring stage of employment, not to

the termination of employment.[2]  Although, hiring/termination may seem like two sides of the same coin, courts have consistently held that a distinction exists, and the CHRIA applies to hiring and not to firing.  See Miller v. Autopart Int'l , No. 3:15cv384, 2016 WL 815596 at *3 (M.D. Pa. Mar. 2, 2016); Dean v. Specialized Soc. Response, No. 09-515, 2011 WL 3734238, at *15 (W.D. Pa. Aug. 24, 2011), Betchy v. Pa. Coach Lines, 2012 Pa. Dist. & Cnty. Dec. LEXIS 472 at *3 (Allegheny April. 19, 2012).

Plaintiff argues that this interpretation of the statute doesn't make sense. Plaintiff reasons that CHRIA is "a complete nullity, [because] an employer could obtain a criminal background check on an applicant, hire the applicant for one day (claiming it did not consider the criminal history)

---

[2] Specifically, the CHRIA provides:

> (a) General rule -- Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.
> (b) Use of Information -- Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.
> (c) Notice -- The employer shall notify in writing the applicant if the decision not to hire the applicant is based in whole or in part on criminal history record information.

18 PA. CONS. STAT. § 9125.

and then immediately terminate the applicant based upon the criminal background history." (Doc 5 at 12). While plaintiff's logic might be compelling, it is not the law. Rather, the CHRIA prohibits employers from arbitrarily relying on a job applicant's criminal history record information during the hiring process. The statute is silent regarding use of criminal history information for purposes of terminating an employee. See 18 PA. CONS. STAT. § 9125, McCorkle v.Schenker Logistics, Inc., No. 1:13-CV-3077, 2014 WL 5020598 at *4 (M.D. Pa. Oct. 8, 2014.)[3]

Accordingly, we find that the CHRIA does not establish a public policy exception to at-will employment under Pennsylvania law. The defendant's motion to dismiss will be granted.[4]

**Conclusion**

In the instant action, plaintiff failed to allege a cause of action under the CHRIA, and failed to allege any of the three judicially recognized and

---

[3] We need not address whether plaintiff has alleged a violation of the CHRIA because his complaint does not allege a cause of action for violation of the CHRIA. It appears, however, that as plaintiff complains of a termination and not a hiring, that he could not maintain such a cause of action.

[4] In certain circumstances it would be appropriate to dismiss the case provisionally and allow the plaintiff to file an amended complaint. Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993). We do not provide the opportunity to amend, however, where such amendment would be futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In the instant case, an amendment would not cure the deficiency, therefore, we will dismiss the case without opportunity to amend.

defined circumstances in which public policy would override employment at-will. Because plaintiff was an at-will employee, and because his termination does not violate the narrowly defined Pennsylvania public policy exceptions, the plaintiff has failed to state a claim for wrongful discharge under Pennsylvania law. The defendant's motion to dismiss will be granted. An appropriate order follows.


**Date: <u>May 30, 2017</u>**     **<u>s/ James M. Munley</u>**
                              **JUDGE JAMES M. MUNLEY**
                              **United States District Court**